UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| POST INVESTMENTS, LTD., | Case No. 1:16-cv-01074-PAE |
| Plaintiff, | |
| v. | |
| TD TRADING, LLC, TRADESTREAM ANALYTICS, LTD., TRADEDESK FINANCIAL GROUP, INC., DAVID SCHAMENS, *Individually, and as Managing Director of TradeStream Analytics, LTD., and* PILANA SCHAMENS*, Individually and as Managing Director of TradeDesk Financial Group, Inc.*, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**Morrison-Tenenbaum, PLLC**

*Attorneys for Plaintiff*
87 Walker Street, 2rd Floor
New York, New York 10013
(212) 620-0938

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT .............................................................................................................................. 1

    I.   PLAINTIFF HAS ALLEGED PLAUSIBLE CLAIMS UNDER THE COMMODITIES EXCHANGE ACT ................................................................................................... 1

        A.  Plaintiff's Allegations Regarding CEA Liability are not Conclusory .............................. 1

        B.  Plaintiff has Adequately Alleged a Threshold Relationship under the CEA, and Therefore does not Lack Standing .................................................................................. 5

        C.  Plaintiff has Satisfied the Pleading Requirements of FRCP § 9(b) in Pleading Commodities Fraud with Particularity ............................................................................ 6

    II.  PLAINTIFF HAS SUBJECT MATTER JURISDICTION UNDER THE CEA TO BRING THIS SUIT ................................................................................................................................ 8

    III. THE STATE LAW CLAIMS AGAINST DEFENDANTS SHOULD NOT BE DISMISSED .............................................................................................................................. 8

    IV. PLAINTIFF'S FIRST, FOURTH, FIFTH, SIXTH, AND EIGHTH CLAIMS ARE NOT DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND SHOULD NOT BE DISMISSED .............................................................................................................................. 9

        A.  Fraud ................................................................................................................................ 9

        B.  Breach Of The Implied Covenant Of Good Faith And Fair Dealing ............................ 10

        C.  Conversion ..................................................................................................................... 11

        D.  Unjust Enrichment ........................................................................................................ 12

        E.  Constructive Trust ......................................................................................................... 12

CONCLUSION ........................................................................................................................ 13

EXHIBIT A .............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................................. 6

*CFTC v. Equity Fin. Group LLC*, 572 F.3d 150 (3d Cir. 2009) ....................................... 3

*DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F.2d 1242 (2d Cir. 1987) .............................. 7

*East 2 West Product Group, LLC v. Henry Brown, LLC*, 2010 U.S. Dist. LEXIS 73642 (S.D.N.Y. 2010) .................................................................................................. 11

*Fasolino Foods v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992) .......................... 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 2015 U.S. Dist. LEXIS 147561 (S.D.N.Y. 2015) .................................................................................................. 12

*Karasyk v. Marc Commodities Corp.,* 770 F. Supp. 824 (S.D.N.Y. 1991) .................................. 7

*Klein & Futures, Inc. v. Bd. of Trade of City of N.Y.C*., 464 F.3d 255 (2d Cir. 2006) ................... 5

*Loginovskaya v. Batratchenko,* 936 F.Supp.2d 357 (S.D.N.Y. 2013) ............................................ 5

*Markowitz v. Merrill Lynch, Pierce, FNNR SMTH,* 579 F.Supp 124 (S.D.N.Y 1984) .................. 4

*Miree v. DeKalb County, Georgia*, 433 U.S. 25 (1977) ................................................................ 4

*Nilsen v. Prudential-Bache Securities*, 761 F.Supp. 279 (S.D.N.Y. 1991) .................................. 4

*Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124 (2d Cir. 1994) ..................................................... 7

*Strobl v. New York Mercantile Exchange,* 561 F.Supp. 379 (S.D.N.Y 1983) ............................... 8

*Tropical Sails Corp. v. Yext, Inc*., 2015 U.S. Dist. LEXIS 64722 (S.D.N.Y. 2015) .................... 12

*Wall v. CSX Transp., Inc*., 471 F.3d 410 (2d Cir. 2016) ............................................................... 9

**Statutes**

7 U.S.C. § 1 ................................................................................................................................ 10

7 U.S.C. § 2 ............................................................................................................................. 3, 4

7 U.S.C. § 25(a)(1)(A) .................................................................................................. 2, 7

7 U.S.C. § 25(c) ................................................................................................................ 9

7 U.S.C. § 6o(1)(A) .......................................................................................................... 3

7 U.S.C. § 6o(1)(B) .......................................................................................................... 3

7 U.S.C. §6o ..................................................................................................................... 2

28 U.S.C. § 1331 .............................................................................................................. 9

Fed. R. Civ. P. § 12(b)(6) ................................................................................................. 3

Fed R. CP § 15(a)(2) ...................................................................................................... 14

FRCP § 9(b) ............................................................................................................. 2, 8, 9

## Other Authorities

H.R. Rep. No. 975, 93d Cong., 2d Sess. 64 (1974) ........................................................ 3

Jenny Liu, *Reframing Commodity Pools in the Wake of Dodd-Frank and the Volcker Rule*, 99 Cornell L. Rev. 1 (2013) ............................................................................................ 3

**PRELIMINARY STATEMENT**

1.  Plaintiff respectfully submits the instant memorandum in opposition to defendant's motion to dismiss the Amended Complaint. The facts as alleged in the Amended Complaint must be taken as true and are incorporated herein.

**ARGUMENT**

**I. PLAINTIFF HAS ALLEGED PLAUSIBLE CLAIMS UNDER THE COMMODITIES EXCHANGE ACT**

2.  Defendants' first contention is that Count Nine of Plaintiff's Amended Complaint fails to state a cause of action, as the pleading does not provide a sufficient factual basis for a violation of the Commodities Exchange Act (the "CEA"). This claim is meritless, and should be dismissed.

3.  As a preliminary matter, the Plaintiff's allegations regarding CEA liability are not conclusory. The Amended Complaint alleges facts sufficient to show that David Schamens acted as a "Commodity Pool Operator," and that Defendants' advisory role was more than solely incidental to their business. As such Plaintiffs state a claim under 7 U.S.C. § 6o.

4.  Second, Plaintiff has standing under the CEA, because they have adequately alleged a threshold relationship under 7 U.S.C. § 25(a)(1)(A) and (B).

5.  Lastly, Plaintiff has satisfied the pleading requirements of Fed. R. Civ. P ("FRCP") § 9(b) in pleading commodities fraud with particularity.

**A. Plaintiff's Allegations Regarding CEA Liability are not Conclusory**

6.  Defendants contend that Plaintiff did not allege that David Schamens acted as a "Commodity Pool Operator" and that Defendants held themselves out as "Commodity Trading Advisors" as defined in the CEA with the particularity required by FRCP § 12(b)(6).

7. Defendants mischaracterize the clear allegations of the Amended Complaint and the law regarding sufficiently pleading a claim under the CEA. Contrary to Defendants' assertions, the Complaint is replete with allegations that fully support a plausible inference that Defendants' conduct falls into the ambit of the CEA.

8. In relevant part, § 4o of the CEA prohibits a "commodity trading advisor" or "commodity pool operator" from "employing any device, scheme, or artifice to defraud any client or…prospective client." 7 U.S.C. § 6o (1)(A). § 4o further prohibits a "commodity trading advisor" or "commodity pool operator" from "engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any client…or prospective client." 7 U.S.C. § 6o(1)(B).

9. Under the CEA, a "commodity pool operator" is "any person engaged in the business which is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds securities or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market…." 7 U.S.C. § 2.

10. A "commodity trading advisor" is defined as "any person who, for compensation or profit, engages in the business of advising others…as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market…or who, for compensation or profit and as part of a regular business, issues or promulgates analyses or reports concerning any of the foregoing but such term does not include…any…futures commission merchant…Provided, that the furnishing

of such services by the foregoing person is solely incidental to the conduct of [its] business or profession." *Id*.

11. These two important definitions were intentionally drafted broadly to encompass all types of organizations that may engage in trading of interests in futures or options on futures. *See* H.R. Rep. No. 975, 93d Cong., 2d Sess. 64 (1974) (explaining that a primary concern of Congress was the use of deceptive practices to solicit funds from prospective pool participants).

12. Motivated by the laudable regulatory purpose of preventing evasion of the registration and customer protection requirements of the CEA and the rules thereunder, the Commodity Futures Trading Commission (the "CFTC") has consistently declined to apply a narrow reading to these definitions. *See* Jenny Liu, *Reframing Commodity Pools in the Wake of Dodd-Frank and the Volcker Rule*, 99 Cornell L. Rev. 1 (2013) (noting that since the inception of the CPO as a regulated entity in 1975, the CFTC has pursued an informal system to make the determination of who qualifies as a commodity pool operator).

13. As such, an entity may be a "commodity pool operator" within the meaning of the CEA if it solicits funds for the purpose of trading commodities futures, even if it does not engage in such trades directly. *See CFTC v. Equity Fin. Group LLC*, 572 F.3d 150 (3d. Cir. 2009).

14. In the case at hand, the factual allegations of fraudulent misappropriation described in the Amended Complaint are exactly the sort of deceptive practices the CEA is designed to prevent.

15. Defendants' contention that the Amended Complaint should be dismissed because it uses language from the statute verbatim when alleging that David Schamens is a commodity

pool operator is misguided.

16. Under Southern District case law, when a plaintiff's complaint uses language other than that of a "commodity pool operator" or "commodity trading advisor" in describing a defendant's conduct under the CEA, it is likely to be dismissed. *See Nilsen v. Prudential-Bache Securities*, 761 F.Supp. 279 (S.D.N.Y. 1991); *Markowitz v. Merrill Lynch, Pierce, FNNR SMTH,* 579 F.Supp 124 (S.D.N.Y 1984).

17. In *Nilsen*, the Southern District dismissed the plaintiff's CEA claims after finding that their complaint alleged only that the defendant was a "futures commission merchant." *Id* at 292.

18. The Court in *Markowitz* dismissed the plaintiff's CEA claims for the same reason.

19. In the present case, the facts are clearly distinguishable from both *Nilsen* and *Markowitz*. Here, the Amended Complaint specifically alleges that David Schamens had been acting as a "Commodity Pool Operator." *See* Am. Compl. at ¶ 89.

20. Furthermore, the Amended Complaint alleges with particularity that the offshore trading pool entered into on October 7, 2013 had been presented to the Plaintiff by David Schamens as an opportunity to "combine trading capital with others, in order to receive increased buying power to trade securities and a platform for making trades." *See* Am. Compl. ¶ 18.

21. Such conduct falls within the broad definition of "advising others…as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery…" under the CEA. 7 U.S.C. § 2.

22. Taking the Plaintiff's factual allegations as true, as a court must, *Miree v. DeKalb County, Georgia*, 433 U.S. 25 (1977), Plaintiff's allegations are sufficient to state a claim under

§ 4o of the CEA, 7 U.S.C. § 6o.

> **B.  Plaintiff has Adequately Alleged a Threshold Relationship under the CEA, and Therefore does not Lack Standing**

23. § 22 of the CEA establishes a private right of action for violations of the CEA's provisions, including § 25. A private plaintiff has standing to sue for a CEA violation only if he or she alleges (A) the receipt of "trading advice…for a fee;" (B) the making of a "contract of sale of any commodity for future delivery" or the deposit or payment of "money, securities, or property…*in connection with any order* to make such contract or swap;" (C) the purchase or sale or placing of an order for purchase or sale of a commodity; or (D) market manipulation "in connection with a swap, or a contract of sale of a commodity." *Loginovskaya v. Batratchenko*, 936 F.Supp.2d 357 (S.D.N.Y. 2013) (emphasis added by the court) (quoting 7 U.S.C. § 25(a)(1)(A)-(D)).

24. Plaintiff invokes the second and third of the four enumerated relationships as the basis of their standing.

25. Where a plaintiff has no financial interest in the trades in question, has nothing to do with any trading decisions, and does not own the contracts traded, a court should dismiss the complaint for lack of standing. *Klein & Futures, Inc. v. Bd. of Trade of City of N.Y.C.*, 464 F.3d 255, 259 (2d Cir. 2006).

26. In *Klein*, the plaintiff was essentially acting "as a broker or agent that earned commissions for handling its customers' trades." *Id* at 260. Furthermore, the plaintiff had no direct interest in the resulting profits or losses on the trades at issue. *Id*. Accordingly, the Court dismissed on standing grounds.

27. By contrast, the Amended Complaint alleges that Plaintiff was the actual

purchaser who invested in the pooled offshore trading venture. *See* Am. Compl. at ¶ 19. As such, he had a direct interest in the resulting profits or losses, caused by Defendant TradeDesk Financial Group, Inc.'s management of the investment amount. *See* Am. Compl. at ¶ 10.

28. The Amended Complaint further alleges that David Schamens presented Plaintiff with the opportunity to participate in a pooled offshore trading vehicle, which offered increased buying power to trade securities and a platform for making trades in exchange for a $2,000,000 contribution. *See* Am. Compl. at ¶ 18.

29. Furthermore, by Defendants David Schamens own admission, he provided trading advice to Plaintiff regarding certain trades in futures, as well as options on futures that Plaintiff was engaging in during November 2013 through April 2014. *See* Exhibit A.

30. In light of the foregoing, the Amended Complaint has sufficiently alleged standing under 7 U.S.C. § 25(a)(1)(A).

### C. Plaintiff has Satisfied the Pleading Requirements of FRCP § 9(b) in Pleading Commodities Fraud with Particularity

31. Defendants argue that the Amended Complaint has not pled the commodities fraud allegations with sufficient particularity. This meritless claim should be dismissed.

32. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

33. FRCP § 9(b) requires that in all averments of fraud, the "circumstances constituting fraud…shall be stated with particularity."

34. Rule 9(b) applies with equal force to all claims of fraud – whether they arise under state law, the CEA, or other federal law. *Karasyk v. Marc Commodities Corp.,* 770

F.Supp. 824, 829 (S.D.N.Y. 1991).

35. FRCP § 9(b) requires the plaintiff to state the "time, place, speaker and content of the alleged misrepresentations." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). At a bare minimum, plaintiffs must state who said what to whom, and when and where they said it. Shadowy and suggestive gossip-column-style innuendos do not suffice. *Id.*

36. Further, the complaint must allege that the defendant intended to defraud, or at least allege facts creating an inference of fraudulent intent. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

37. According to the Amended Complaint, after executing a Member Interest Redemption and Release Agreement (the "Redemption Agreement") in which he agreed to relinquish $1,479,692 of the Plaintiff's deposited funds, Defendant David Schamens fraudulently claimed to have made a wire transfer in the amount of $643,500 from the Bank of America account of TD TRADING, LLC to the Plaintiff on April 30, 2014. *See* Am. Compl. at ¶¶ 29-31.

38. The Amended Complaint goes on to allege that Defendants made fraudulent transfers of capital held for the benefit of Plaintiff to transferees without fair consideration and with the intent to defraud Plaintiff of the value of his contribution. *See Id.* at ¶ 77.

39. The Amended Complaint specifically alleges that David Schamens and Pilana Schamens initiated the fraudulent transfers, and TradeStream Analytics, LTD., and TradeDesk Financial Group, Inc., received and accepted the fraudulent transfers with knowledge thereof. *See Id.* at ¶ 78.

40. Plaintiff's Amended Complaint satisfies the pleading requirements of FRCP §

7

9(b).

## II. PLAINTIFF HAS SUBJECT MATTER JURISDICTION UNDER THE CEA TO BRING THIS SUIT

41. Subject matter jurisdiction for Plaintiff's federal claims arises from 28 U.S.C. § 1331, the federal question statute, and 7 U.S.C. § 25(c), the jurisdictional grant of the private right of action under the CEA.

42. Since Plaintiff has adequately alleged a threshold relationship under the CEA, they therefore do not lack standing. *See* ¶¶ 17-24 *supra*.

## III. THE STATE LAW CLAIMS AGAINST DEFENDANTS SHOULD NOT BE DISMISSED

43. Defendants argue that the Plaintiff's state law claims should be dismissed because they are preempted by the CEA. However, as the Defendant correctly admits out – this is far from clear.

44. The CEA itself does not contain an express statement of preemption. *See* 7 U.S.C. § 1.

45. Some Courts in the Southern District have pointed out that Congress' primary concern in enacting the CEA was "preemption of federal and state regulatory schemes." *See Strobl v. New York Mercantile Exchange,* 561 F.Supp. 379 (S.D.N.Y 1983) (quoting Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy*, 29 Vand. L. Rev. 1 (1976)).

46. Although there is nothing in the statutory language, legislative history or purpose of the CEA indicating a congressional intent to preempt all common law claims, Defendants' arbitrarily request that the Court dismiss all nine of Plaintiff's state law claims without

elaborating on how they bear on the regulation of the commodities future markets.

47. Accordingly, Plaintiff asks that the Court dismiss the Defendants' argument as meritless.

**IV. PLAINTIFF'S FIRST, FOURTH, FIFTH, SIXTH, AND EIGHTH CLAIMS ARE NOT DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND SHOULD NOT BE DISMISSED**

48. Defendants argue that Plaintiff should be barred from pursuing their fraud, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, and constructive trust claims, on the premise that they are premised upon the same facts and circumstances as the breach of contract claim.

49. We shall examine each of these claims in turn.

**A. Fraud**

50. It is well settled that "a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud." *Wall v. CSX Transp., Inc*., 471 F.3d 410 (2d Cir. 2016).

51. Thus, a fraud claim based on allegations that the defendant fraudulently induced the plaintiff to enter into a contract may be joined in a cause of action with one for breach of the same contract where the alleged misrepresentations consist of more than mere promissory statements about what is to be done in the future. *Id*.

52. According to the Amended Complaint, in order to induce Plaintiff to enter into the Subscription Agreement and LLC Agreement, Defendants misrepresented to Plaintiff, among other things that, Defendant TD Trading, LLC, was formed in the Cayman Islands to accept funds from multiple investors for an offshore trading pool designed to give all the members

9

leverage and facilities for trading securities. *See* Am. Compl. ¶ 50.

53. This alleged misrepresentation was made prior to and as an inducement for it to enter into the subject contract.

54. Defendants' repeatedly made representations that they formed and operated a Cayman Island LLC and provided contracts to Plaintiff naming the entity as a counterparty when, in fact, the Cayman Islands have only recently begun to recognize limited liability companies as a corporate form. Furthermore, the Cayman Island Companies Registry contains no entity carrying the name "TD Trading."

55. Plaintiff's fraud claim is not premised upon the alleged breach of a duty arising under the contract, bur rather, is based upon a misrepresentation that is extraneous to the terms of the Subscription Agreement and LLC Agreement.

56. As such, Plaintiff's fraud claim is based upon a legal duty distinct from and independent of the privity claim that founds the breach of contract cause of action, and should not be dismissed as duplicative.

### B. <u>Breach Of The Implied Covenant Of Good Faith And Fair Dealing</u>

57. A claim for breach of the implied covenant of good faith and fair dealing is generally actionable only where wrongs independent of the express terms of the contract are asserted and demands for the recovery of separate damages not intertwined the damages resulting from a breach of a contractual are advanced. F*asolino Foods v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992).

58. In the present case, the breach of the implied covenant of good faith and faith dealing claim is based on separate allegations than the breach of contract claim.

59. In support of the former, the Amended Complaint alleges that Defendants "have engaged in a bad faith scheme to impermissibly misappropriate the capital deposited by Plaintiff for its use in the trading pool. Furthermore Defendant David Schamens has breached his duty to act in good faith and to deal fairly with Plaintiff by causing falsified wire transfer documents to be provided to Plaintiff." *See* Am. Compl. ¶¶ 67-8.

60. Whereas in the latter, the Amended Complaint bases its allegations on facts that are independent from the express terms of the contract, namely, Plaintiffs right to redeem its membership interest in exchange for the funds it contributed, Defendant David Schamens agreement to return $1,479,692 of the Plaintiff's trading capital in two tranches, and the Defendants failure to make any redemption payments to Plaintiff per their obligations under the LLC Agreement and Redemption Agreement. *See* Am. Compl. ¶¶ 56-8.

61. Furthermore, the breach of the implied covenant of good faith and faith dealing claim requests that the Court, enjoining Defendants from continuing to transfer and spend the funds wrongfully held by them, the breach of contract claim makes no such demand.

62. Accordingly, Plaintiff's breach of the implied covenant of good faith and faith dealing claim should not be dismissed as duplicative.

### C. Conversion

63. Defendants argue that Plaintiff's allegations regarding conversion do not differ factually whatsoever from its allegations regarding breach of contract, and should be dismissed as duplicative. This claim is meritless.

64. "Under New York law, the tort of conversion cannot be asserted if there is a duplicative claim sounding in contract unless the plaintiff asserts that the defendant has breached

a duty independent of the contract." *East 2 West Product Group, LLC v. Henry Brown, LLC*, 2010 U.S. Dist. LEXIS 73642, at 1 (S.D.N.Y. 2010).

65. By the conduct alleged in the Amended Complaint, Defendants have knowingly and intentionally converted and continue to convert Plaintiff's property to their own use and benefit without the authority to do so. *See* Am. Compl. ¶ 71-2.

66. This cause of action is independent of the breach of contract, and should therefore not be dismissed as duplicative.

### D. Unjust Enrichment

67. Generally, an unjust enrichment claim is not "available where it simply duplicates, or replaces, a conventional contract or tort claim. *Tropical Sails Corp. v. Yext, Inc.*, 2015 U.S. Dist. LEXIS 64722, at 7 (S.D.N.Y. 2015).

68. New York courts have, however, permitted an exception to this rule, such that, an unjust enrichment claim "is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud." *Id*.

69. In the present case, the Amended Complaint alleges just that. *See* Am. Compl. ¶ 50.

### E. Constructive Trust

70. To the extent that Plaintiff has stated claims for unjust enrichment, a constructive trust is simply a mechanism by which restitution can be made effective. *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 2015 U.S. Dist. LEXIS 147561 (S.D.N.Y. 2015).

71. As previously mentioned, Plaintiff's unjust enrichment claim is not duplicative of the breach of contract claim, because Plaintiff properly alleged that the contracts were induced

by fraud.

72. As such, the constructive trust claim should not be dismissed as duplicative either.

## CONCLUSION

73. For all the reasons set forth above, Defendants' motion to dismiss the Amended Complaint should be denied in its entirety.

74. Furthermore, since the filing of the Amended Complaint, important facts and information continue to be revealed. *See* Exhibit A. These ongoing disclosures provide important additional facts that Plaintiff could now plead in order to further support their allegations and claims. To any extent that any portion of any claim is found to be lacking in any respect, Plaintiff should be granted leave to replead same based on the extensive and on-going new revelations about Defendants' conduct. *See* FRCP § 15(a)(2).

Dated: December 1, 2016
    New York, New York

Morrison-Tenenbaum, PLLC
Respectfully submitted,
By: */s/ Lawrence F. Morrison*
Lawrence F. Morrison
87 Walker Street, 2rd Floor
New York, New York 10013
(212) 620-0938

**EXHIBIT A**

**Email from Defendant David Schamens in Response to Plaintiff's Demand:**

From: David W. Schamens
Sent: Friday, August 1, 2014 6:42 PM
To: Lauren Mack
Cc: Jerald Tenenbaum

Will reply in detail next week, but suffice to say:

1. There is no "ponzi" scheme, though we certainly understand that the lack of funds not being returned as indicated would raise concerns. Clearly Mr. Favre has not given you all the information or perhaps he does not know: TD Trading, LLC due to an initial idea conceived by one of Mr. Favre's other partners, has kept the funds to provide capital for buying power for other traders in the LLC. This plan was the partner's idea from the very inception in October 2013, and is further documented in IM, email, and other communications. To be frank, though there have been profits, the "idea" has not worked as it was presented. As such, arrangements have been made to replace this capital. That simple.
2. With regard to other insinuations and allegations:
    a. TD Trading, LLC is a simple trading partnership, not regulated, nor required to be so. Not even close. There are many such partnerships everywhere.
    b. TradeStream Analytics, is a 16 year old company with no requirement whatsoever to have any type of registration.
    c. The same applies for its parent company TradeDesk Financial Group, Inc.
    d. As such, there is no requirement by myself to have such registrations, thus there is no violation of any bar. In fact, our counsel in Atlanta is formerly with the SEC, regularly in contact with them, and due to my successful litigation against the parties that caused the bar, the SEC actually recommended to our counsel a Rule 193 application be filed to lift the bar. However, I have not had the need to do so. To misrepresent this bar without all the facts is actionable, and you and your client should be careful in how this is communicated. We have repeatedly made clear starting in December 2013 that the trading Post engaged in during November 2013 through April 2014 was highly risky, caused themselves substantial losses, and violated numerous provisions of the agreement regarding concentration of positions and not being hedged overnight. This caused us substantial headaches with the clearing firm and loss of two long time account relationships at two other firms. Your client nonchalantly said they didn't care, hence you can see perhaps one of the reasons we have taken our time.
    e. Regarding our banking relationships at Bank of America, to insinuate we do not have relationships or accounts there is absurd and not worth further comment. To interfere with those relationships, however, is actionable.
3. We will agree to Mr. Favre's last email, and send details next week.